I would like to reserve two minutes for rebuttal. Thank you. In regards to the issues presented in this appeal, of the three issues, the first being shackling and the prejudice to client, and the second being government misconduct, I would like to focus on the third issue, which is the motion of suppress. And more specifically, I found it would be usually I tell people not to recite facts, but I don't understand how this whole thing came about. I gather that the warrant was quite separate from the incidents that led to this conviction, this prosecution here. And did they have the phone? Where was the phone before? When they stopped the car, there were four phones. Did they take the four phones then? Did they search the four phones then? No, Your Honor. What happened is that there was a unrelated shooting that occurred on October 1st of 2006 that was investigated by Reno Police Department. Mr. Carter was stopped approximately on November 30th of 2016. At this time, the suspects in the shooting had already been taken into custody. They were taken into custody early in November. When they stopped Mr. Carter at the ---- Kagan, I say, by the way, it would have been nice if somebody would have put this in the briefs. It was really a mystery. All of a sudden, this warrant's showing up, and you can't figure out what it's doing there. But go ahead. Thank you, Your Honor. And when Mr. Carter was stopped, there was two other passengers in the car, one in the front and one in the back. When the officers eventually searched the vehicle, they found four cell phones. And, in fact, what's really unknown and part of the issue for the search warrant application is where these cell phones were located. One was allegedly on Mr. Carter. The other three were either somewhere near Mr. Carter or somewhere else in the car vehicle. That was actually not a very developed issue in regards to the actual underlying ---- But the police, even though they arrested him at that point, did not take the phones? They took the phones into custody, Your Honor. But then it wasn't until January, so a good three months later, of 2017, that the Sparks Police Department, which was a different law enforcement agency, asked for the search warrant application, which you see in the record, Officer Williams. And in that, he tried to make some nexus or connection as regards to this October 1st shooting, where Mr. Carter, I really want to stress, was not a suspect in that. But most curiously is that Officer Williams really misrepresents, and I'm going to use that strong word, to the Court, that he observed or heard some kind of communications between Mr. Wagner, who was a suspect in the shooting, and Mr. Carter, who was not. But that was a misrepresentation because there is actually no factual basis that there was any communication. Officer Williams, when he first listened to phone calls from Mr. Wagner, I said that he was talking to an unidentified male once. When he then turned and did his search warrant application months later, he stated that he heard phone conversations, making it plural, which was not accurate, to Carter, which, again, was not accurate. Now, what's really interesting is that the judge, in a footnote to his order when he denies an evidentiary hearing on the issue, states, well, the government made a logical conclusion or assumption that, you know, months later, Officer Williams probably heard Carter's phone or voice. There's nothing to substantiate that. And the fact that we're still questioning the facts up here in the Ninth Circuit on appeal just really reiterates why there should have been an evidentiary hearing under the Frank standard and that there should have been an evidentiary hearing to clear up. Very well, the officer may have had some basis and may have actually identified it being Mr. Carter who was on the phone with Mr. Wagner and, therefore, would have some nexus. But how this all hooks up with this case is you also complain and contend in a different argument that asking for the phone number, you don't claim it was a Miranda violation. You say it violated the motion in limine. I guess because you didn't make a Miranda argument or I don't know why. But you don't raise it as a Miranda argument. But in terms of how it hooks up, I mean, are those distinct in the sense that if the phone number was for Lawrence O.K., then they found this information through the phone, and it didn't matter whether they knew the phone number? And on the other hand, what's the connection between those two things? Well, first is that the phone number that was actually searched, well, all four phones were searched, and only one had evidentiary value to this case. That phone number was not any of the phone numbers that was called by Mr. Wagner. That fact was omitted by the officer in his search warrant application. When you read the search warrant application by Officer Williams, it makes it sound like there was ongoing communication that the police were aware of directly between Mr. Carter and Mr. Wagner. And then when the government actually states, Officer Williams states, well, and also, criminals are known to communicate on the telephone. That is essentially his basis, which is nonsensical and not really a good way to put the whole theory under probable cause under the Fourth Amendment. So the mere fact under the phone number, and you're returning back to that issue, Your Honor, as to he stated a phone number that later turned out to be one of the phones when he was being booked in. There was a pretrial motion, a limine that prohibited all statements after Miranda. The Miranda issue had already been argued, and the every statement after that should have been suppressed. And that's why I was arguing that even a statement through booking after Miranda was a violation of the pretrial order. So the cell phone was first observed, I guess, when he voluntarily gave his cell phone during the booking, if I understand this correctly, right? There was four cell phones that were found in the car. One cell phone was on Mr. Carter so far as the record shows. And that was the same cell phone that he told the police about when they booked him, correct? That was a phone number that was associated with the phone that was found on him. That was the fatal phone number that this so-called incriminating evidence was found on, right? As far as the record shows, yes. So was there anything wrong with the fact that he divulged that cell phone number during the booking process? The police knew about it then, right? Well, the fact that they're using it and turn it as presumptive evidence that it is his cell phone, and I would like to clarify, the record is actually a little bit more confusing than that. When the officer testified who booked in Mr. Carter, he couldn't remember was it one cell phone, was it two cell phones? He just remembered that there was a cover on one cell phone. But what I don't understand is that the police had that cell phone number at the beginning, right, during the booking process, right? Yes. So wouldn't they have discovered all that information on that cell phone at any event, even in the absence of the search warrant? No, because you have to get a search warrant to search someone's cell phone. And if they had actually done a proper search warrant application and stated, we found this phone on him, this was the phone number on this phone, we're asking to search this for evidence of this crime that he's being charged with, ex-felon in possession of a firearm, we wouldn't be here. So then if the that was suppressed, then this case has to be recharged completely, I take it, right? No, Your Honor. We're going back towards the search warrant application that Officer Williams proffered is full of omissions and misrepresentations. And that's because they were trying to get to all the cell phones on a fishing association. My judge block is asking you whether this was such essential evidence that the we would have to overturn the conviction at that point. Yes. All right. But so I'm still a bit confused about what happened here. So you then say that the phone call that, was it Williams was calling Carter? Was none of these phones? It was never. There were recorded phone calls from Mr. Wagner. Mr. Wagner. I'm sorry. To a female. Okay. And there was one where a male who, quote, was unidentified came on the phone and spoke with Mr. Wagner. And it wasn't any of those phones? It was none of those phones. So what was the basis in the warrant for searching Carter's phones? As the officer stated, it's because he believes criminals use phones, and therefore he thinks that because of the, quote, communications between Carter and Wagner. Because they had one other communication on a different phone. No. There was no proof of that. Well, did he believe the unidentified male was Carter? In his first original report, he wrote that he wrote in the affidavit that he said it was Carter, and the district judge had some explanation for why he would now know that. But assuming he knew it was Carter, or that wasn't a lie, he still — the question is, how does that get him to the telephones, to Carter's telephones? Exactly. Well, I'm asking you. I mean, that's the question that we're stuck with, is because we don't have a developed record. And I would like to go back that even though the officer stated he just — it was Carter, he didn't say how he knew that. I listened to Mr. Carter. I met with Mr. Carter. I recognized his voice. I went back and listened to the prior recordings after Mr. Carter was arrested. Because those recordings occurred before Mr. Carter was pulled over in the vehicle. Okay. Your time is up. I'll give you one minute or a battle. Thank you. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Nancy Olson, appearing for the government. I'd like to pick up — Sorry, go ahead. You want to say you want to reserve? No, I was going to say I'd like to pick up on Judge Berzon's question. The question is, you have to — you're in the hot seat. Right. Why is this search warrant valid? I'll start at the beginning with what it says and why it's linked to the phones. Because I think that's the Court's main question, is how is this linked to Carter's phones specifically? So in the affidavit, we already heard about the background of the October 1st shooting, right? So that leads us to Wagner's arrest. Wagner is incarcerated. He starts making recorded DL phone calls to his girlfriend's phone. May I comment to you as well that the briefs were completely inadequate and confusing on this question. You couldn't figure out where — in either brief, where these were, why we were having this warrant, what it was — how it was connected to anything. It was really difficult to follow. Now you can tell us. Thank you for the feedback. And I think that we'll take that into consideration, certainly. So back to the recorded DL phone calls, Wagner places two phone calls to his girlfriend's cell phone. The district court recognized that this was, in fact, his girlfriend's cell phone, not Carter's. But the content of the calls is what's important. So in the first call, he calls the girlfriend's cell phone but actually speaks to Carter. So he's using this phone as a means to reach Carter. Wait. Stop. How do you know he was speaking to Carter then? From the affidavit, because we have the officer who heard the call first and knew it was a male. He then interacts with Carter after he's arrested on November 30th. Back up. That was the unidentified male that she was speaking to. Correct. But it was the same guy? So as of November 16th, when this recorded call happens, all we hear is the male's voice. Fast forward two weeks later, October 30th — sorry, November 30th, Carter's arrested. He goes through the booking process. The officer speaks with him. He's interviewed, the recorded interview, and so forth. So — That's when he draws a conclusion that the unidentified male was Carter. Was Carter. That's right. But that's not — was it — there was not testimony to that. And it's not in the affidavit. You're just surmising. It was a factual finding by the district court based on the — It was surmised. Right. That's right. It was an inference. It was an inference based on the fact that first he was unidentified. He then met with him. Then he presumably identified him. So an inference from the record. So he is on the phone call with Carter, and he says, find Cuddy, which is Perkins, and tell him to flee the area regarding the shooting. So he's trying to obstruct the investigation about the shooting, and he's giving Carter instructions on what to do next. But once the unidentified male is associated with Carter, everything flows from that point, I guess, right? It does. And the reason why it flows straight to his phones as opposed to some other place to search is because what you hear on the recorded jail calls. He's telling Carter to go find Perkins and tell him to flee. So we can infer from that that one place that he's going to make these communications is on his cell phones, whether it be call or text. But he's instructed to communicate with Perkins and tell him to flee. And then in the second call, same to the girlfriend's cell phone, he doesn't speak directly with Carter, but he instructs the girlfriend to stay in communication with Carter, which again draws another link to Carter's phones, because it's reasonable to assume that the girlfriend is then going to communicate with Carter as Perkins instructed her to do via his cell phones. And then we have these four phones. Right. The warrant goes to all of them, right? That's right. Because they were taken from Carter's car? That's right. Your Honor, I would ask that the Court look just at the one where the evidence came from, though, because as a practical matter, there's going to be no prejudices to the other three. There was just simply nothing on them. And if you look at the one where the evidence came from, that was the one that was in his pocket. If you look at Officer Schar's testimony, it's pages 205 of the record. He talks about getting it from his pocket. You do me a favor. I'm going to have to leave. I thought there was no evidentiary hearing. Just at trial when they talk about how this all unfolded. It does seem odd that there's no evidentiary hearing. That's unusual. There was no evidentiary hearing because Mr. Carter didn't make the threshold showing for Franks. So here he didn't show a substantial preliminary showing with an offer of proof about intentional or reckless falsity or omission. And he also didn't show materiality. So he didn't rise to the level of getting that hearing. But what do you mean by materiality? You mean that any misrepresentations were material? Right. So the ones he alleged, if you put them back in, would it have undermined probable cause? So you do me a favor. Yes. I'm going to have to reread the affidavit. I'm going to have to be candid with you. Can you tell me where in the affidavit the affiant links the unidentified male to Carter? He just talks about him being Carter. He doesn't go back and reference his report. He doesn't do that, does he? So correct. So there's a police report that's written on November 17th right after the jail calls. It's still early in the investigation. That's at the time when the officer thinks he's an unidentified male. But when the affidavit is written, I believe in January, more investigation has taken place, including the arrest of Carter, which was by happenstance for the gun. But once he's arrested, they're still trying to talk to him about this October 1st shooting. And that's what the whole suppression issue was about with his Miranda statements. As I said, we tried to interview him about the shooting. Miranda was improper. The government conceded that, and so that information was excluded at trial. And it was the same officer who signed the affidavit who was the booking agent when he was arrested? Is that right? It's not the same officer who signed the affidavit. But the officer who signed the affidavit is involved in investigating this October 1st shooting. So where does the inference come from? That he knew it was Carter? Because his interview was recorded when he was booked in at the police station. His video, his interview was recorded at that time. And the affidavit was made after then? Correct. The affidavit was made well after that, well into the investigation of this case. But there are certainly holes in this connection to Carter. And was that asserted in the Franks motion, that the unidentified male was Carter? Yes. That was one of the discrepancies. And why is that true? I mean, it seems to me, again, this goes to why there wasn't an evidentiary hearing. I mean, you can come up with a chain of inferences about how he might have known it was Carter, but we have no idea whether he listened to the tape, whether he knew his voice, whether or whatever. Well, we have an ongoing investigation, and then we have an officer asserting that this is Carter talking to Perkins. And so we're assuming that based on that investigation, that's how they concluded that information. You're assuming, exactly, without an evidentiary hearing. Because the officer stated, based on an investigation, Wagner called Carter. I mean, ordinarily, wouldn't an affidavit like this say why he thought it was Carter? I mean, ordinarily, you know, this was Carter because I knew his voice or because I had listened to the tape or because something? I think it would be fairly common to see that, but I don't think it undermines it without that. Because what you have is the officer talking about who Wagner is calling on these jail calls and stating from his own personal knowledge that he knows that it's Carter. And then we have him talking about what Carter should go and do after that, which is make communications and so on. Sotomayor, don't you think the provident thing would have been to have had a Franks hearing in this particular dynamic situation? Do I think that it would have been a problem? Franks hearing. Don't you think there should have been a hearing? All this could have been flushed out if there was a hearing? No, Your Honor, because if you look at the facts that the district court found, those are on clear error review. And there's enough on the record to support why these are the facts. Well, certainly his finding that the guy knew he was Carter, I mean, it's kind of taking you know, pulling teeth to find out that, in fact, the guy who signed this wasn't the person who arrested Carter or who interacted with Carter, and therefore, there's an additional inference, which I don't know that the judge realized, that he had to have listened to the — that there was a tape, number one, which isn't in the affidavit, and, two, that he listened to the tape, which isn't in the affidavit, and, three, that he recognized the voice as a result of listening to the tape, which also wasn't in the affidavit. So you have inferences, piled on inferences, about things that could have happened. Sure, they could have happened, but we have no idea whether they happened. But you do have a detailed affidavit that goes all the way back to the October 1st shooting, talks all about what information they're gathering. And I do want to correct one thing that my opposing counsel said, where — I understand that, but it doesn't do it. It doesn't explain why he knew it was Carter. But Carter was a suspect from the very beginning in the shooting. His car was caught on video surveillance. And so we know that Carter is in play. And so it makes sense that if you heard a voice and then you are already looking into Carter, that you would go and confirm that he was there. So there is enough linking the evidence in the affidavit where Carter is instructed to go out and tell Cuddy to flee, and that that could be done on his cell phones, as well as the fact that he tells the girlfriend to keep in communication with Carter, similarly could commonly be done on the cell phone. So — That you keep in communication with Carter or to keep in communication with whoever was on the telephone? With — Wagner told his girlfriend to keep in communication with Carter. So the girlfriend was kind of the link in those jail calls. So if we were to assume hypothetically that the search warrant was not valid, what would be your position then? If you were to assume that the search warrant was not valid and we would still fall back on our alternative arguments that we made to the district court, such as that it would still be able to be included based on good faith, because, again, back to the Franks hearing, even if the Court thinks that there should have been an evidentiary hearing just on the factual matters, there was still no substantial preliminary showing about intentional or recklessly made false statements or omissions. And I think that even were there a hearing, that showing could not be made. Is that really why you have that Franks hearing? Well, correct, but kind of two separate points, Your Honor, one being about just the unfolding the facts as they were leading to this affidavit. For example, your question about how do they know an identified male was Carter and then unfold that. But I think if you build a record and you have that hearing, it doesn't necessarily meet their burden of showing that intentional or recklessly made false statement or omission. Well, if that's what the answer is to that question, if the answer is we didn't have any idea, we just said it because we wanted to get at Carter because of this other conviction, that would be a problem, right? Correct. That's what the answer is. So I think what would happen just in your hypothetical question, Judge Block, is that you would have a factual hearing. They still wouldn't be able to show the intentional Franks problem. But what I'm saying, that depends. Whether they can show the intentional Franks problem depends what the answer. Correct. What develops as the facts as to why they said it was Carter's phone. Correct. And I'm just making a prediction based on what I see in the record. One of the things we could do is to send it back. I'm not saying what we're going to do. I'm just trying to sort it all out. Correct. For a Franks hearing, maybe this is the type of case where there should have been a Franks hearing. What do you say about that? Well, I think there's a distinction between should there have been a hearing because there were too many factual questions on the warrant versus should there have been a Franks hearing, and that's where the defendant has met a burden to get a Franks hearing. So it's kind of two separate questions. I think that if the court finds that the record doesn't have enough information in it to lead to what the facts were, then that's more of a factual development point in just building that record. And then maybe the defendant could look at the record, and if what happens, what Judge Berzon said, is the officer said, I had no idea, I just made it up, well, then sure, then maybe he could make a Franks motion at that time to throw it out. But if all we're talking about is factual development, that's a separate thing from ---- Yes, there's a lot in the declaration because it talks about the one-up ---- there  who was on the phone with Carter that it would have been proper to have this ---- disregarding whether they knew Carter was on the phone at all, that it still would have ---- the other facts would have supported probable cause on this hearing. But there's nothing in this declaration that makes Carter a suspect in the crime, is there? Yes, there's a lot in the declaration because it talks about the one-up ---- there was an argument at the one-up bar between Carter and, I forget the other guy's name, but the rival gang members and then the victim and his cousin, and after that, that's when they get to the parking lot, there's the shooting. It does talk about ---- it's at, if I can give you a page number here, page 428-29 of the record, there's a lot of background talking about why Carter was involved in that shooting. So Carter is not just pulled out of thin air, he's a prime suspect in the first day. So everybody involved in that shooting should have their cell phone examined, right? No. Once we get the jail calls and once we have him instructing Carter to make further communications ---- So it doesn't take that in a jail call. So you're not arguing that without the jail calls, there would be probable cause to search those phones? That's right, Your Honor, because we have to have some link to why are they  We can't just say he's a suspect so we like his phone. Well, but you did say something earlier about just that, in general, we could have thought they were communicating by phone. Well, I think you have to link it to Carter's cell phone rather than just saying people communicate by phones. All right. Thank you very much. Thank you. It was very helpful. And you will have a minute in rebuttal. Now, this is all a work in progress. Go ahead. Thank you, Your Honors. I do agree with you, Judge Block, that this is a time and a place where there should have been an evidentiary hearing and really have fleshed out these issues that we're still What about the suggestion that you didn't adequately make a prima facie case, essentially, for Frank's case? The State, excuse me, the government has really, and unfortunately, I think some of the case law has conflated the two. A substantial showing in regards to getting to a Frank's hearing is vastly different than showing by a preponderance the evidence. But in this case, if you took out all the considerations as to the communications that the officer alleges that he knew, which were, again, based upon inference, upon inference, upon inference. Did you specifically ask for a Frank's hearing as opposed to a suppression hearing? He asked for a Frank's hearing. And in the order it does, we're not going to have a Frank's hearing on this evidentiary issue. He did not waive the issue at all. He did not. So with that, Your Honors, we're asking that you reverse for that issue to have the evidentiary hearing to see where they come up with these inferences, if there is any misrepresentation, and therefore undermines the probable cause to the magistrate. Okay. Thank you very much. Thank you. Let me ask you one last question. I presume we could have the hearing without presently overturning the conviction. You would just have the hearing at this point. And depending on its outcome would depend whether there was a problem with the denial of the suppression motion and, therefore, with the conviction. You could. But the evidence that was gleaned from the cell phone and from this, we'll say, faulty Well, I understand that. But it's a conclusion. If the Frank's hearing was that there was no problem, then there would be no point in us overturning the conviction. Could be, except if you're going in with a key for conviction. I think we've done this before, actually. And then remand for a Frank's hearing. No, we would simply do, I guess, what we called a limited remand. We have some term for this, which is essentially we leave the appeal in abeyance and we send back for the hearing. It could at that point, but I would still submit that it should be a reversal conviction because the government relied so heavily upon that. But you can't do that without first having the Frank's hearing. If the Frank's hearing comes out in favor of the government, there's no point. And I agree with you on that, Your Honors. Well, thank you very much. Thank you. Thank you both of you for your argument. The case of United States v. Carter is submitted. We'll go to Arie v. Whitaker and then, as I said, we'll take a short break.
judges: Gould, Berzon, Block